[No. C025658. Third Dist. Mar. 16, 1998.]

KRISTEN RINAKER, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
THE PEOPLE et al., Real Parties in Interest.

## COUNSEL

Kristen Rinaker, in pro. per., and Robert E. Oakes for Petitioner.

Terrence Dermody, County Counsel, Rebecca Davis, Deputy County Counsel, for Respondent.

John S. Phillips, District Attorney, William F. Moss, Deputy District Attorney, Gerald Gleeson, Ruth Maurice, Hardwich & Goss and Douglas A. Goss for Real Parties in Interest.

## OPINION

**SCOTLAND, J.**—Evidence Code section 1119 provides that no evidence of anything said in the course of a mediation is admissible or subject to discovery in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which testimony may be compelled to be given. (Further section references are to the Evidence Code unless otherwise specified.)[1]

This case poses several questions regarding the effect of section 1119 on the juvenile delinquency proceeding being prosecuted against real parties in interest (the minors) pursuant to Welfare and Institutions Code section 602: Is the juvenile delinquency proceeding a civil action or other noncriminal proceeding within the meaning of section 1119? If so, does the minors' constitutional right to confront and cross-examine a witness against them trump the confidentiality provision of section 1119 and make admissible for the purpose of impeachment any inconsistent statements the witness made during mediation of a civil harassment action which was based upon the same allegations at issue in the juvenile delinquency proceeding? Do the witness and the mediator have a right of privacy that is threatened by the disclosure of statements the witness made during confidential mediation? In any event, by voluntarily agreeing to submit to confidential mediation, did the minors waive their right to elicit in the juvenile delinquency proceeding any testimony concerning statements the witness made during mediation? If not, is it necessary for the juvenile court to conduct an in camera hearing to determine whether the minors' right to effective impeachment may be ensured without breaching the confidentiality of the mediation process?

We conclude a juvenile delinquency proceeding pursuant to Welfare and Institutions Code section 602 is a "civil action" within the meaning of section 1119 and, thus, the confidentiality provisions of section 1119 apply to this proceeding.

However, for reasons which follow, the public policy served by the confidentiality provisions of section 1119 must yield when necessary to

---

[1]The order on appeal in this case was issued in December 1996, when the confidentiality provision of section 1119 was contained in former section 1152.5. Thereafter, former section 1152.5 was repealed, reenacted in part, and renumbered in various sections, including section 1119. (Stats. 1997, ch. 772, §§ 3, 5.) To avoid confusion, we shall refer to the applicable sections as reenacted and renumbered.

ensure the minors' constitutional right to effective cross-examination and impeachment of an adverse witness in a juvenile delinquency proceeding.

Contrary to petitioner's claim, neither the witness nor the mediator had a reasonable expectation of privacy in inconsistent statements made by the witness during confidential mediation because it has long been established that, when balanced against the competing goals of preventing perjury and preserving the integrity of the truth-seeking process of a juvenile delinquency proceeding, the interest in promoting settlements (in this case through confidential mediation of a civil harassment action against the minors) must yield to the minors' constitutional right to effective impeachment.

As we shall explain, by voluntarily agreeing to participate in confidential mediation in an effort to settle the civil harassment action against them, the minors did not knowingly and intelligently waive their right to use any inconsistent statements made by their accuser during mediation to impeach his testimony in a subsequent juvenile delinquency proceeding because that right was not "known" to them under the facts at the time they agreed to mediation.

In answering the final question, we conclude that, before allowing the minors to question the mediator under oath in this juvenile dependency proceeding concerning statements made during confidential mediation, the juvenile court should have conducted an in camera hearing to weigh the public's interest in maintaining the confidentiality of mediation against the minors' constitutionally based claim of need for the testimony, and to determine whether the minors have established that the mediator's testimony is necessary to vindicate their right of confrontation. As we shall explain, requiring an in camera hearing maintains the confidentiality of the mediation process while the juvenile court considers factors bearing upon whether the minors' constitutional right of effective impeachment compels breach of the confidential mediation process.

Accordingly, we shall issue a peremptory writ of mandate directing the juvenile court to vacate its order allowing the minors to question the mediator under oath concerning statements made during confidential mediation, and to conduct further proceedings consistent with this opinion.

### FACTS AND PROCEDURAL BACKGROUND

In this juvenile delinquency proceeding (Welf. & Inst. Code, § 602), the minors, Christopher G. and Huy D., are charged by the People of California

with committing vandalism in violation of Penal Code section 594, during an incident in which the minors allegedly threw rocks at Arsenio Torres's car.

The incident also was the basis of a civil harassment action brought by Torres against the minors. After Torres obtained a temporary restraining order against them, the minors participated with Torres in mediation conducted by petitioner Kristen Rinaker in an effort to resolve the civil harassment action.

Rinaker is a volunteer mediator affiliated with the Mediation Center of San Joaquin County (the Center), a community-based, nonprofit corporation. Among other things, the Center provides mediation support services to respondent Superior Court of San Joaquin County, which encourages parties to civil harassment actions to resolve their differences through mediation.

According to Rinaker, the participation by such parties in mediation is voluntary. Those who elect to participate must agree that statements made in mediation are confidential and that mediators will not testify regarding mediation proceedings. Mediation proceedings are not conducted under oath, do not follow traditional rules of evidence, and are not limited to developing the facts. Rather, mediators are instructed to "draw out the parties' subjective perceptions of, and feelings about, the events that have brought them into conflict" and to encourage parties "to verbally acknowledge the other's point of view, whether they come to share that point of view or not."

Following mediation, the court entered an order in the civil harassment action, directing the minors to stay away from Torres's properties and stating: "All parties to be respectful of each other. No parties will make accusations against each other without evidence."

Thereafter, the minors served Rinaker with a subpoena to appear and testify in the juvenile delinquency proceeding being prosecuted against them. Rinaker balked, and the minors filed a "motion to compel witness to testify."

The minors claimed that, during mediation of the civil harassment action, Torres had "admitted to all present, including the mediator, that he did not actually see who threw the rocks at his car." Asserting they would seek to introduce Rinaker's testimony to that effect only if Torres should testify otherwise on direct examination during the juvenile delinquency proceeding, the minors argued their rights to due process of law and a fair trial would be compromised if Rinaker were not compelled to testify.

· Rinaker opposed the motion, arguing that statements made during the mediation are privileged under section 1119 and protected from disclosure by the right of privacy embodied in article I, section 1 of the California Constitution. Rinaker further suggested that, even if statements during mediation are admissible in a subsequent juvenile delinquency proceeding, by voluntarily agreeing to participate in confidential mediation, the minors waived any right to compel her testimony.

The court ruled in the minors' favor, holding section 1119 does not apply because a juvenile delinquency proceeding is not a "civil action" within the meaning of the section. Stating that the proceeding "has a very criminal nature because there are criminal sanctions for juvenile[s]," the court concluded the confidentiality provision of section 1119 was not "designed to overcome the right to a fair trial" by excluding a statement "which would exculpate a [juvenile] in a [delinquency] case and not allow it to come in for impeachment purposes."

Rinaker petitioned this court for a writ of mandate directing the juvenile court to set aside its order. (Code Civ. Proc., § 1085.) We issued an alternative writ because this case involves a claim of "privilege" and a matter of importance to the public. (*Rudnick* v. *Superior Court* (1974) 11 Cal.3d 924, 928 [114 Cal.Rptr. 603, 523 P.2d 643]; *Slagle* v. *Superior Court* (1989) 211 Cal.App.3d 1309, 1312 [260 Cal.Rptr. 122].) We granted Rinaker's application for a stay of the juvenile proceedings pending resolution of her petition.

DISCUSSION

I

We begin by addressing Rinaker's argument that the juvenile court erred in concluding section 1119 does not apply to a juvenile delinquency proceeding because such a proceeding is not a civil action within the meaning of the statute.[2]

Section 1119 states: "Except as otherwise provided in this chapter: [¶] (a) No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not

---

[2]The statutory scheme makes it apparent the Legislature intended that the confidentiality provision of section 1119 may be asserted by the mediator as well as by the participants in the mediation. (See § 1127.)

be compelled, in any arbitration, administrative adjudication, *civil action, or other noncriminal proceeding* in which, pursuant to law, testimony can be compelled to be given. [¶] (b) No writing . . . that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, *civil action, or other noncriminal proceeding* in which, pursuant to law, testimony can be compelled to be given. [¶] (c) All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential." (Italics added.)[3]

■ "Actions" are of two kinds: civil and criminal. (Code Civ. Proc., § 24.) A criminal action "includes criminal proceedings." (§ 130.) The Penal Code defines and provides for the prosecution of a criminal action (Code Civ. Proc., § 31), whereas the Welfare and Institutions Code defines and provides for the prosecution of a juvenile delinquency proceeding alleging a minor has committed a crime (Welf. & Inst. Code, § 602). "An order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime. . . , *nor shall a proceeding in the juvenile court be deemed a criminal proceeding.*" (Welf. & Inst. Code, § 203, italics added.)

Under the plain meaning of these statutes, a juvenile delinquency proceeding is a "civil action" rather than a "criminal proceeding." Accordingly, courts have long held that juvenile delinquency proceedings are civil actions, not criminal in nature. (E.g., *People* v. *Dotson* (1956) 46 Cal.2d 891, 895 [299 P.2d 875]; *In re Castro* (1966) 243 Cal.App.2d 402, 406-407 [52 Cal.Rptr. 469]; *In re Magnuson* (1952) 110 Cal.App.2d 73, 74 [242 P.2d 362]; but see *In re Sidney M.* (1984) 162 Cal.App.3d 39, 47 [208 Cal.Rptr. 378].)

■ Because a juvenile delinquency proceeding is a civil action, it comes within the plain language of section 1119. Had the Legislature intended to exclude juvenile delinquency proceedings from the scope of the statute, it knew how to say so as it did, for example, with mediation in a civil proceeding involving child custody or visitation (see fn. 3, *ante*).

---

[3]The confidentiality provided by section 1119 may be waived (§ 1122), and the section does not apply to mediation in a family conciliation court proceeding (Fam. Code, § 1800 et seq.), mediation of child custody and visitation (Fam. Code, § 3160 et seq.), or a mandatory settlement conference (Cal. Rules of Court, rule 222). (§ 1117.)

## II

Nevertheless, the minors contend the confidentiality provision of section 1119 "takes [a] back seat" to the minors' "constitutional right to a fair trial, which includes presenting exonerating evidence to the [juvenile] court."[4]

For reasons which follow, we agree the confidentiality provision of section 1119 must yield if it conflicts with the minors' constitutional right to effective impeachment of an adverse witness in this juvenile delinquency proceeding.

█ In the context of criminal proceedings, the constitutional right of an accused to confront and cross-examine a prosecution witness includes the right to impeach, i.e., discredit, the witness with evidence of his or her inconsistent statements. (*Pennsylvania* v. *Ritchie* (1987) 480 U.S. 39, 51-52 [107 S.Ct. 989, 998-999, 94 L.Ed.2d 40, 54]; *United States* v. *Bagley* (1985) 473 U.S. 667, 676-677 [105 S.Ct. 3375, 3380-3381, 87 L.Ed.2d 481, 490-491]; *Davis* v. *Alaska* (1974) 415 U.S. 308, 315-319 [94 S.Ct. 1105, 1109-1112, 39 L.Ed.2d 347, 353-355].) The right to confront and cross-examine witnesses has "long been recognized as essential to due process." (*Chambers* v. *Mississippi* (1973) 410 U.S. 284, 294 [93 S.Ct. 1038, 1045, 35 L.Ed.2d 297, 308].)

Likewise, due process of law entitles juveniles to certain fundamental protections of the Bill of Rights in proceedings that may result in confinement or other sanctions, whether the state labels these proceedings "criminal" or "civil." (*Alfredo A.* v. *Superior Court* (1994) 6 Cal.4th 1212, 1225 [26 Cal.Rptr.2d 623, 865 P.2d 56]; *Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 375 [93 Cal.Rptr. 752, 482 P.2d 664]; *In re William G.* (1985) 40 Cal.3d 550, 557, fn. 3 [221 Cal.Rptr. 118, 709 P.2d 1287]; *In re Scott K.* (1979) 24 Cal.3d 395, 401-402 [155 Cal.Rptr. 671, 595 P.2d 105].) A juvenile delinquency action is such a proceeding.

Against this backdrop of the constitutional right to due process of law, we consider the confidentiality provision of section 1119. █ Enacted as former section 1152.5, the statute is intended to encourage parties to disputes to resolve their differences through mediation rather than civil litigation. (*Ryan* v. *Garcia* (1994) 27 Cal.App.4th 1006, 1010 [33 Cal.Rptr.2d 158].) "[T]he public policy underlying section [1119] is to promote mediation as a

---

[4]Although both of the minors sought to introduce Rinaker's testimony concerning inconsistent statements allegedly made by Torres during confidential mediation, only Christopher G. filed a return to the alternative writ of mandate. The arguments in the return mirror those made in the juvenile court by both the minors. Hence, to avoid confusion, we shall refer to arguments asserted by Christopher G. in this writ proceeding as being those of "the minors."

preferable alternative to judicial proceedings by providing confidentiality." (*Ibid.*)

■ According to Rinaker, voluntary mediation of civil harassment disputes "was specifically designed to relieve crowded [court] calendars and to divert potentially explosive harassment cases to a forum where peaceful resolutions are likely. This program and others like it throughout the [S]tate of California cannot function unless the confidentiality of these mediations is assured. [Citation.] [¶] Without confidentiality, mediations would be subject to all kinds of manipulation and abuse. The heart of the mediation exchange typically involves concessions, waivers, confusions, misstatements, confessions, implications, angry words, insults . . . the list could go on. The very atmosphere that serves to promote resolution in mediation would quickly become a trap for the unwary if proceedings were not kept confidential. Warnings would need to be given; protections would need to be devised. Parties would need the advice of counsel to participate in mediations. The costs and complexity of the process might soon rival those of a litigation, thus nullifying a large advantage of community mediation, its accessibility to ranks of the public who are sometimes excluded from more expensive dispute resolution opportunities. [Citation.]"

The minors concede mediation serves an important function. Therefore, they "do[] not seek a blanket policy allowing statements made in mediation to be automatically admissible in [juvenile delinquency] proceedings." Rather, they assert the confidentiality provision of section 1119 must yield when it conflicts with the constitutional right to impeach a witness in a juvenile delinquency proceeding.

The minors' position finds support in California case law addressing other statutes which exclude or limit evidence on public policy grounds. For example, a criminal defendant's constitutional right to cross-examine and impeach witnesses prevails over the statutory psychotherapist-patient privilege (*People* v. *Reber* (1986) 177 Cal.App.3d 523, 529-531 [223 Cal.Rptr. 139] [former section 1028], overruled by *People* v. *Hammon* (1997) 15 Cal.4th 1117, 1123-1128 [65 Cal.Rptr.2d 1, 938 P.2d 986]) to the extent *People* v. *Reber* held the confrontation clause requires *pretrial* discovery of privileged information and also prevails over the statutory prohibition against admitting "in any action" evidence of a prior offer to plead guilty. (*People* v. *Crow* (1994) 28 Cal.App.4th 440, 448-452 [33 Cal.Rptr.2d 624] [section 1153].) Similarly, courts in civil cases have allowed impeachment with evidence ordinarily excluded on public policy grounds. (*Wilson* v. *Gilbert* (1972) 25 Cal.App.3d 607, 615 [102 Cal.Rptr. 31] [section 1151 prohibition on introducing evidence of subsequent repairs to prove

negligence]; *Brainard* v. *Cotner* (1976) 59 Cal.App.3d 790, 795 [130 Cal.Rptr. 915] [section 1155 prohibition on introducing evidence of insurance to prove wrongdoing].)

That section 1119 serves an important public purpose in promoting the settlement of legal disputes through confidential mediation rather than litigation does not justify the preclusion of effective impeachment of a prosecution witness in a juvenile delinquency proceeding with statements the witness made during mediation. (Cf. *People* v. *Crow, supra,* 28 Cal.App.4th at p. 452.) When balanced against the competing goals of preventing perjury and preserving the integrity of the truth-seeking process of trial in a juvenile delinquency proceeding, the promotion of settlements must yield to the constitutional right to effective impeachment. (*Ibid.*)[5]

Accordingly, section 1119 does not bar the minors from calling Rinaker to appear at their juvenile delinquency proceeding and testify concerning statements made by Torres during confidential mediation if those statements are inconsistent with Torres's testimony in the juvenile delinquency proceeding.

### III

We find no merit in Rinaker's claim that an order compelling her to give such testimony treads impermissibly upon the right of privacy guaranteed by article I, section I of the California Constitution.

According to Rinaker, two privacy rights are threatened by the proposed disclosure of Torres's statements in mediation: Torres's "expectation that one's revelations will not be repeated," and Rinaker's "expectation that one will not be compelled to breach an entrusted confidence."

To prevail, Rinaker must establish (1) a legally protected privacy interest, (2) a reasonable expectation of privacy in the circumstances, and (3) conduct constituting a serious invasion of privacy. (*Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35-37, 39-40 [26 Cal.Rptr.2d 834, 865 P.2d 633].) Even assuming these elements are satisfied, the right of privacy is not absolute, and a competing interest may justify the invasion of the privacy interest. (*Id.,* at pp. 37-38.)

As explained in part II, *ante,* it has long been established that, when balanced against the competing goals of preventing perjury and preserving

---

[5]We are not unsympathetic to Rinaker's concern that unpaid mediators, like her, "would hesitate to volunteer their time so freely if, solely as a result of conducting a mediation, they might be required to become witnesses in later litigation involving disputants." This legitimate concern, however, does not override the greater public interest of preventing perjury and preserving the integrity of the truth-seeking process of trial in a juvenile delinquency proceeding.

the integrity of the truth-seeking process of trial in a juvenile delinquency proceeding, the interest in promoting settlements (in this case through confidential mediation of Torres's civil harassment action against the minors) must yield to the constitutional right to effective impeachment.

Thus, neither Rinaker nor Torres had a reasonable expectation that any statements made by Torres during confidential mediation concerning the rock-throwing incident which were inconsistent with other statements he made about the minors' involvement in the incident would remain private if he later were called as a witness to testify against the minors in a juvenile delinquency proceeding. (Cf. *Garstang* v. *Superior Court* (1995) 39 Cal.App.4th 526, 532-537 [46 Cal.Rptr.2d 84] [held that the right of privacy barred the plaintiff in a civil action for slander and intentional infliction of emotional distress from obtaining the disclosure of statements made during an educational institution's confidential ombudsman process for informally resolving employee and student "conflicts, disputes and grievances"].)

## IV

We also reject Rinaker's contention that, by agreeing to maintain the confidentiality of the mediation proceedings, the minors waived the right to compel Rinaker's testimony concerning any statements Torres made during mediation.

Waiver is " ' "the intentional relinquishment of a known right after knowledge of the facts." ' " (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31 [44 Cal.Rptr.2d 370, 900 P.2d 619], quoting *Roesch* v. *De Mota* (1944) 24 Cal.2d 563, 572 [150 P.2d 422].) Courts will not presume acquiescence in the loss of a fundamental constitutional right, such as the minors' right to effectively confront, cross-examine, and impeach a witness against them in a juvenile delinquency proceeding; rather, we must indulge in every reasonable presumption *against* the waiver of such a right. (*Isbell* v. *County of Sonoma* (1978) 21 Cal.3d 61, 68-69 [145 Cal.Rptr. 368, 577 P.2d 188]; *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 274 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206].) The party claiming that a fundamental right has been waived has the burden to prove the waiver by clear and convincing evidence which does not leave the matter to speculation; doubtful cases will be decided against waiver. (*Waller* v. *Truck Ins. Exchange, Inc., supra*, at p. 31.)

Here, the record indicates that, based upon an incident in which the minors allegedly threw rocks at his car, Torres filed a petition to obtain a

temporary restraining order and enjoin the minors from harassing him. (Code Civ. Proc., § 527.6.) The record does not include the petition; however, because Torres obtained a temporary restraining order and the matter went to mediation, we presume he filed an affidavit identifying the minors as the culprits in the rock-throwing incident. (Code Civ. Proc., § 527.6, subd. (c).) Thus, we presume that, in agreeing to confidential mediation as defendants in the civil harassment action, the minors believed Torres would inform the mediator that they were responsible for the rock-throwing.

Without knowing that Torres would make inconsistent statements during mediation concerning their alleged involvement in the rock-throwing incident, the minors had no knowledge of facts giving rise to their constitutional right to effective impeachment during the subsequent juvenile delinquency proceeding. Accordingly, when they voluntarily agreed to participate in confidential mediation in an effort to settle the civil harassment action against them, the minors did not knowingly and intelligently waive their right to use any inconsistent statements made by Torres during mediation to impeach his testimony in a subsequent juvenile delinquency proceeding because that right was not "known" to them under the facts at the time they agreed to mediation. (*Waller* v. *Truck Ins. Exchange, Inc.*, *supra*, 11 Cal.4th at p. 31; cf. *Petrillo* v. *Bay Area Rapid Transit Dist.* (1988) 197 Cal.App.3d 798, 810 [243 Cal.Rptr. 74].)

V

■ We are persuaded, however, by Rinaker's argument that, before allowing the minors to question the mediator under oath in this juvenile dependency proceeding concerning statements made during confidential mediation, the juvenile court should have conducted an in camera hearing to weigh the "constitutionally based claim of need against the statutory privilege" and determine whether the minors have established that Rinaker's testimony is necessary to "vindicate their rights of confrontation." (Cf. *People* v. *Reber*, *supra*, 177 Cal.App.3d at p. 532; see *Pennsylvania* v. *Ritchie*, *supra*, 480 U.S. at p. 60 [107 S.Ct. at pp. 1002-1003, 94 L.Ed.2d at p. 59].)

Requiring an in camera hearing maintains the confidentiality of the mediation process while the juvenile court considers factors bearing upon whether the minors' constitutional right of effective impeachment compels breach of the confidential mediation process.

First, in an offer of proof in support of their proffered impeachment of prosecution witness Torres, the minors established a prima facie showing

that Torres made a statement during mediation which is inconsistent with his assertion the minors were the culprits in the rock-throwing incident. During the in camera hearing, the juvenile court can determine whether Rinaker is competent to testify regarding the statement. If she denies that Torres made the inconsistent statement attributed to him by the minors, or does not recall whether he made such a statement, that would eliminate the need for her to testify in open court during the juvenile delinquency proceeding.[6]

Second, assuming that during the in camera hearing Rinaker acknowledges she heard Torres make the inconsistent statement, the juvenile court can assess the statement's probative value for the purpose of impeachment. According to Rinaker, "statements made in the course of mediations are not reliable evidence": "Community based mediations are not conducted under oath. An informal atmosphere is maintained. Mediators typically do not consider documentary or physical evidence, pictures or witness testimony. The thrust of the mediation effort is to get the parties to understand each other's feelings and needs relative to the dispute, and to develop a plan for future behaviors that will avoid conflict between them. Mediators may ask parties to consider hypothetical situations in order to help them see beyond an impasse. Parties are encouraged to conciliate, rather than to establish the facts of past disputes. . . . [¶] Under those circumstances parties may deviate from the truth, and may lose track of the various statements they have made in the course of exploring different options. Thus, even if the content of a mediation could be reconstructed with perfect accuracy, its relationship to truth would be uncertain."

If the circumstances under which Torres made inconsistent statements during mediation convince the juvenile court that such statements were untrustworthy in the sense they were made for the purpose of compromise rather than as true allegations of the minors' conduct, it follows that the minors' constitutionally based claim of need for the evidence would not outweigh the countervailing public interest in maintaining the confidentially of the mediation process.

Third, during the in camera hearing, the juvenile court may be able to determine whether the evidence sought by the minors can be introduced without breaching the confidentiality of mediation. Assuming, for example,

---

[6]The record indicates the Center's mediators are volunteers who "keep no records of the matters they mediate." Moreover, they "are not involved in implementing agreements [by the parties in mediation] nor do they have any other continuing relationship with the disputants." Consequently, depending on the number of mediations held by the mediator and the time which has elapsed between the one at issue and the proceeding in which the mediator is summoned to testify, it can be expected that a mediator will be unable to recall specific statements made by the parties in a particular mediation.

Rinaker acknowledges she heard Torres make the inconsistent statement but discloses that, during mediation, the minors stated Torres had told other identified persons that he did not see the minors throw the rocks, the court could conclude Rinaker's testimony would be cumulative to other evidence reasonably available to the minors. Consequently, in balancing the competing public interests at issue, the court could find the interest in preserving confidentiality of the mediation process prevails because Rinaker's testimony is not necessary to vindicate the minor's constitutional right to confront and effectively cross-examine their accuser.

We reject, however, Rinaker's suggestion that the minors should be required to demonstrate "there is no other evidence, unrelated to the mediation, which could be used to undermine [Torres's] identification of the [minors as the rock-throwers]." As the minors point out, the "testimony of a 'disinterested' [witness], i.e., the mediator," may "carry more weight of credibility." Hence, even if other witnesses could testify to Torres's inconsistent statements or impeach his veracity in other ways, Rinaker's testimony could be necessary to vindicate the minors' right of confrontation if the credibility of the other witnesses is suspect.

As noted previously, the in camera hearing outlined above will permit the juvenile court to maintain the confidentiality of the mediation process while the court considers factors bearing upon whether the minors' constitutional right to effective impeachment compels breach of the confidential mediation process.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order allowing the minors to question Rinaker under oath concerning statements made during confidential mediation, and to conduct further proceedings consistent with this opinion. Having served its purpose, the alternative writ is discharged. Upon this decision becoming final, the stay previously issued by this court shall be vacated.

Puglia, P. J., and Morrison, J., concurred.